IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02315-NYW

M.L.,[1]

    Plaintiff,

v.

MARTIN O'MALLEY, Commissioner of Social Security,[2]

    Defendant.

## MEMORANDUM OPINION AND ORDER

This civil action arises under Title II of the Social Security Act (the "Act") for review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant"). For the reasons set forth in this Order, the Commissioner's decision is respectfully **AFFIRMED**.

## BACKGROUND

In this action, Plaintiff M.L. challenges the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB"), which she filed on January 6, 2021. [Doc. 8 at 74, 173–74].[3] Plaintiff alleged in her application that she was

---

[1] The Local Rules for this District provide that "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only." D.C.COLO.LAPR 5.2(b). Accordingly, this Court refers to Plaintiff using her initials only.

[2] Defendant represents that Martin O'Malley became the Commissioner of Social Security on December 20, 2023. [Doc. 10 at 1 n.1]. Therefore, the Clerk of the Court is **DIRECTED** to **AMEND** the caption of this action to reflect Commissioner O'Malley as the Defendant pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

[3] When citing to the Administrative Record, the Court utilizes the docket number assigned by the CM/ECF system and the page number associated with the Administrative Record,

experiencing, and prevented from working due to, the following conditions: a mild intellectual disability; persistent depressive disorder; generalized anxiety disorder; unspecified trauma- and stressor-related disorder; and autism spectrum disorder. [*Id.* at 77]. M.L. listed her disability onset date as October 31, 2018. [*Id.*].

The Social Security Administration ("SSA") initially denied Plaintiff's request for benefits on June 14, 2021, [*id.* at 109–12], and affirmed its denial after Plaintiff requested reconsideration, [*id.* at 113–14]. M.L. then requested a hearing before an Administrative Law Judge ("ALJ"), [*id.* at 121–22], and a hearing was convened on January 12, 2023, [*id.* at 43].

On March 3, 2023, Administrative Law Judge Lynn Ginsberg issued a decision denying Plaintiff's request for benefits. [*Id.* at 10–23]. In the decision, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2024 and that she had not engaged in substantial gainful activity as of her alleged disability onset date of October 31, 2018. [*Id.* at 12–13]. The ALJ determined that Plaintiff has the following severe impairments: autism spectrum disorder, an intellectual disability, and major depressive disorder. [*Id.* at 13]. However, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in the Social Security Regulations. [*Id.*]. The

---

which is found in the bottom right-hand corner of each page. For all other documents, the Court cites to the document and page number generated by the CM/ECF system, rather than the page numbers assigned by the Parties.

ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a "full range of work at all exertional levels"[4] with the following non-exertional limitations:

> [Plaintiff] can never climb ladders, ropes, or scaffolds. She can have no exposure to unprotected heights. She can occasionally use moving machinery. She is able to understand, remember, and carry out simple instructions that can be learned after a brief demonstration and up to and including 30 days of on-the-job training. She can keep pace sufficient to complete tasks and meet quotas typically found in unskilled work. However, she is limited to goal-oriented work and not time sensitive, strict production quota work. She can have occasional interaction with the public and coworkers. She can adapt to occasional changes in the workplace.

[*Id.* at 16]. The ALJ also concluded that Plaintiff could perform her past relevant work as a hand packager. [*Id.* at 21].

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 18, 2023, [*id.* at 1–3], which rendered the ALJ's decision the final decision of the Commissioner. Plaintiff subsequently sought judicial review of the Commissioner's decision in the United States District Court for the District of Colorado on September 11, 2023. [Doc. 1]. This matter is now ripe for consideration, and the Court considers the Parties' arguments below.

## LEGAL STANDARD

An individual is eligible for DIB under the Act if she is insured, has not reached retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove that she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). An individual is disabled only if her "physical or mental impairment or impairments

---

[4] The Code of Federal Regulations lists five different exertional levels of work—sedentary work, light work, medium work, heavy work, and very heavy work—and sets forth requirements and/or limitations for each. *See* 20 C.F.R. § 404.1567(a)–(e).

are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002); *see also* 42 U.S.C. § 423(d)(1)(A). When a claimant has one or more physical or mental impairments, the Commissioner must consider the combined effects in making a disability determination. 42 U.S.C. § 423(d)(2)(B).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. 20 C.F.R. § 404.1520(a)(4). The five steps contemplate the following determinations:

1. Whether the claimant has engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment or combination of impairments;
3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;
4. Whether the claimant has the RFC to perform her past relevant work; and
5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See id.* §§ 404.1520(a)(4)(i)–(v); *see also Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis," while the Commissioner bears the burden of proof at step five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a

4

subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted).

In reviewing the Commissioner's final decision, the Court limits its inquiry to whether substantial evidence supports the decision and whether the Commissioner applied the correct legal standards. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Flaherty*, 515 F.3d at 1070 (quotation omitted), and evidence is not substantial "if it is overwhelmed by other evidence in the record or constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In conducting its review, the Court "cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

Remand is warranted where the ALJ fails to apply the correct legal standard or fails to provide the reviewing court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation omitted). But if the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

## ANALYSIS

M.L. contends that the ALJ's decision—specifically, her RFC determination—is not supported by substantial evidence because the ALJ "erred in her analysis of the mental opinion evidence proffered by Pualani R. Jeffries, Psy.D.[,] and Matthew Martinich,

5

Psy.D."[5] [Doc. 9 at 1, 8]. She raises two points of error. First, she argues that it was improper for the ALJ to consider her lack of mental health treatment in weighing the persuasiveness of Dr. Martinich's opinions because the ALJ "failed to recognize that those suffering from mental impairments may not recognize the need for related treatment." [*Id.* at 10–11]. Then, she asserts that the ALJ improperly relied on Plaintiff's "normal mental status exams" and cherry-picked parts of the record in finding Dr. Martinich's opinions not persuasive. [*Id.* at 11–12].

Defendant responds by arguing that the ALJ properly followed the five-step sequential process in evaluating Plaintiff's disability claim and applied the correct legal standings when evaluating the medical opinion evidence. [Doc. 10 at 7–15]. Defendant further contends that Plaintiff's arguments essentially ask this Court to reweigh evidence in her favor. [*Id.* at 10].

**I.   Evaluating Medical Opinions**

The Social Security Regulations identify five types of evidence the SSA considers in adjudicating a claim for benefits: (1) objective medical evidence; (2) medical opinions; (3) other medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [the

---

[5] Although Plaintiff references opinions from both Dr. Jeffries and Dr. Martinich, Plaintiff focuses on a specific neuropsychological evaluation, *see* [Doc. 9 at 5–6, 9–10], which lists Dr. Jeffries as the "[e]xaminer" and Dr. Martinich as the "[s]upervisor" and which is signed only by Dr. Martinich, *see* [Doc. 8 at 284, 288]. The Court notes that the ALJ described this evaluation as containing the opinions of Dr. Martinich, not Dr. Jeffries. *See* [*id.* at 20]. Indeed, Dr. Jeffries is not mentioned in the ALJ's decision. *See* [*id.* at 10–23]. Accordingly, the Court refers to this evaluation as containing Dr. Martinich's opinions, though the Court acknowledges that the examination underlying the final evaluation was seemingly performed by Dr. Jeffries.

claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions" in her work-related abilities. *Id.* § 404.1513(a)(2). The ALJ has a duty to "give consideration to all the medical opinions in the record," *Keyes-Zachary*, 695 F.3d at 1161, and the ALJ must articulate how persuasive she finds each medical opinion, 20 C.F.R. § 404.1520c(a)–(b).

The persuasiveness of a medical source's opinion is evaluated using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's area of specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. *Id.* § 404.1520c(c). The Regulations instruct that the factors of supportability and consistency "are the most important factors." *Id.* § 404.1520c(b)(2). The ALJ is therefore required to explain how she considered the supportability and consistency of a medical source's opinion, and "may, but [is] not required to, explain how [she] considered the [remaining factors], as appropriate." *Id.*

The supportability factor considers whether the medical source's opinions are supported by "objective medical evidence" and "supporting explanations," *id.* § 404.1520c(c)(1), and looks at whether the medical source's opinions are supported by the provider's own notes, diagnoses, and explanations, *Crystal R. E. v. Kijakazi*, No. 4:20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (supportability is "something internal to the medical source" because it examines "objective medical evidence and supporting explanations <u>presented by</u> a medical source . . . to <u>support</u> his or her medical opinion(s)" (quoting 20 C.F.R. § 404.1520c(c)(1))). Conversely, the consistency factor requires a comparison between the medical source opinion and "the

7

evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 404.1520c(c)(2). "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." *Id.*

The Regulations do not "prescribe the depth at which the ALJ must discuss" the factors of supportability and consistency. *Harp v. Kijakazi*, No. 21-cv-00275-KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022). But at minimum, the ALJ must "provide an explanation that allows the reviewing court to follow [her] reasoning and communicates how [s]he considered the factors of consistency and supportability for each medical source's opinions." *Zambrano v. Kijakazi*, No. 20-cv-01356-KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022).

## II.     Dr. Martinich's Opinions

In his evaluation, Dr. Martinich stated that M.L. experiences difficulties in her ability to hold information and to concentrate, as well as memory difficulties, [Doc. 8 at 287], and that she is moderately to severely impaired in the area of attention; moderately impaired in the area of memory; and mildly impaired in the areas of executive function, planning, organizing, and judgment, [*id.* at 284]. He also noted that she functions on a moderately low level of communication and socialization and that her overall adaptive functioning is rated at a low level. [*Id.*]. Dr. Martinich opined that

> [Plaintiff] may benefit when tasks are broken down into smaller steps and mastered one at a time, so multiple steps do not become overwhelming. She may also benefit from instructions that are brief and to the point. Instructions should be repeated frequently, and [M.L.] may need to be asked to repeat crucial instructions back. . . . [Plaintiff] may benefit from the use of planners and organizers to address present difficulties with memory.

[*Id.* at 287].

8

The ALJ rated Dr. Martinich's opinions "not persuasive." [*Id.* at 20]. The ALJ recounted the neuropsychological evaluation of M.L. and found that Dr. Martinich's opinions were "overly restrictive and inconsistent with the record as a whole," as M.L. "is able to perform her activities of daily living independently, mental health treatment has been limited, and she has had normal findings on mental status examinations, including normal mood, affect, behavior, judgment, insight, and thought content." [*Id.*].

### III. Whether the ALJ Erred in Her Assessment of Dr. Martinich's Opinions

First, Plaintiff contends that the ALJ erred when she relied on Plaintiff's limited mental health treatment in concluding that Dr. Martinich's opinions in the neuropsychological evaluation were "overly restrictive and inconsistent with the record as a whole." [Doc. 9 at 10]. She argues that "the ALJ failed to recognize that those suffering from mental impairments may not recognize the need for related treatment," and asserts that the Tenth Circuit "has made clear that this is not [a] valid reason to discount a mental [limitations] opinion." [*Id.*]. In support, she relies on a case from this District: *Hiserodt v. Astrue*, No. 10-cv-01498-WYD, 2011 WL 3759774 (D. Colo. Aug. 25, 2011). *See* [Doc. 9 at 10–11].

In *Hiserodt*, the Honorable Wiley Y. Daniel concluded that an ALJ had erred at step two—the step where the ALJ determines whether the claimant has a medically severe impairment—because, among other reasons, the ALJ had relied on the claimant's lack of mental health treatment to find that the claimant did not have a severe mental impairment. 2011 WL 3759774, at *8. Judge Daniel rejected the ALJ's reliance on the lack of mental health treatment, holding that a "lack of treatment is not a proper consideration in assessing the severity of the mental impairments at step two." *Id.*

9

In so ruling, Judge Daniel relied on the Tenth Circuit's unpublished decision in *Grotendorst v. Astrue*, wherein the Tenth Circuit reached the same conclusion on the same issue.  *See* 370 F. App'x 879, 883 (10th Cir. 2010).  In *Grotendorst*, the ALJ had similarly concluded at step two that the claimant's mental health conditions were not severe, relying in part on the lack of objective medical evidence that she had been treated for her conditions.  *Id.* at 882–83.  This was reversible error because the Social Security Regulations "set out exactly how an ALJ is to determine severity, and consideration of the amount of treatment received by a claimant does not play a role in that determination." *Id.* at 883 (emphasis omitted).  Specifically, the Regulations provide "four broad functional areas" that serve as criteria to assess the severity of a claimant's mental impairments at step two, and the claimant's treatment history is not one of the listed considerations.  *See* 20 C.F.R. 404.1520a(c)(3).[6]  Indeed, as the *Grotendorst* court explained, "the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations."  370 F. App'x at 883.  Because the ALJ failed to follow those Regulations, and because that error was not harmless, the Tenth Circuit remanded the case.  *Id.* at 883–84.

Neither *Hiserodt* nor *Grotendorst* are on point with this case, where the ALJ relied on a lack of mental health treatment not to determine the severity of M.L.'s impairments, but to weigh the persuasiveness of a medical source opinion.  *See* [Doc. 8 at 20; Doc. 9

---

[6] The Regulations currently state that the SSA must consider the claimant's ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. § 404.1520a(c)(3).  At the time the *Grotendorst* decision was issued, the four categories were slightly different, requiring the SSA to consider the claimant's "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  *See* 20 C.F.R. § 404.1520a(c)(3) (2006); *see also Grotendorst*, 370 F. App'x at 882.

at 9–10 (Plaintiff arguing that it was error to consider her lack of treatment in finding that Dr. Martinich's opinions were overly restrictive and inconsistent with the record)]. Unlike *Hiserodt* and *Grotendorst*, where the ALJ's consideration of the lack of treatment ran afoul of the applicable Regulations, *see Grotendorst*, 370 F. App'x at 883, the Regulations applicable in this context *require* the ALJ to consider whether a medical source's opinions are consistent with and supported by the entire medical record, *see* 20 C.F.R. §§ 404.1520c(b)(2), (c)(1), which includes Plaintiff's mental health treatment records (or lack thereof). *See, e.g.*, *DeHerrera v. Berryhill*, No. 16-cv-02293-RBJ, 2017 WL 4081888, at *5 (D. Colo. Sept. 15, 2017) (distinguishing *Grotendorst*'s step-two analysis and concluding that "in determining the weight to assign to [a medical source's] opinion, it was proper for the ALJ to consider—as a part of the record as a whole—the amount of treatment [the claimant] obtained"); *Casas v. Saul*, No. 19-cv-01154-KRS, 2021 WL 107244, at *6 (D.N.M. Jan. 12, 2021) ("In assessing the consistency of the [medical source's] opinions with that record, the ALJ was permitted to consider the fact that Plaintiff had not previously sought treatment from a mental health professional."); *Jones v. Kijakazi*, No. 5:21-cv-01086-P, 2022 WL 2101517, at *5 (W.D. Okla. June 10, 2022) ("[L]ack of medical treatment is 'fair game' for consideration at step four.").

The Court acknowledges Plaintiff's point that "persons suffering from a mental impairment may not recognize the need for treatment," *Hiserodt*, 2011 WL 3759774, at *8, but a lack of treatment is nevertheless relevant to the ALJ's consistency assessment, *Casas*, 2021 WL 107244, at *6; *Garcia v. Kijakazi*, No. 21-cv-00337-KK, 2022 WL 4516086, at *16 (D.N.M. Sept. 28, 2022) ("An ALJ may properly consider a claimant's lack of treatment when determining if a medical source opinion is consistent with the

record."). The ALJ did not disregard the Regulations or otherwise commit legal error by considering Plaintiff's lack of mental health treatment in weighing Dr. Martinich's opinions.

Plaintiff then argues that although her mental health treatment "may have been limited, the objective findings from [her] consultative examinations unequivocally established significant functional deficits." [Doc. 9 at 11]. Plaintiff notes that she was assessed by Dr. Annie Ren with a mild intellectual disability; major depressive disorder; and autism spectrum disorder, and as markedly or moderately limited in several domains. [*Id.* (citing [Doc. 8 at 360])]. She contends that the record shows that "even despite limited [mental health] treatment, [her] mental limitations are not only severe but disabling," concluding that the ALJ's reliance on her infrequent mental health treatment was thus in error. [*Id.*].

The Court is respectfully unpersuaded by this argument. While Plaintiff directs the Court to evidence that *she believes* supports a finding of disability, Plaintiff's different view of the evidence does not provide a basis for remand, as the Court cannot reweigh the evidence in this case or substitute its judgment for the Commissioner's. *Smith*, 821 F.3d at 1266; *see also McKellar v. Colvin*, No. 15-cv-02521-CBS, 2017 WL 1023381, at *5 (D. Colo. Mar. 15, 2017) ("Plaintiff's arguments that these medical records mandate a difference conclusion . . . are little more than thinly veiled requests for this court to reweigh the evidence, which it cannot do."). Moreover, the record shows that the ALJ did consider this evidence and Dr. Ren's opinions, but found Dr. Ren's opinions "not fully persuasive," "overly restrictive," and "inconsistent with the record as a whole," [Doc. 8 at 20], and Plaintiff does not challenge this portion of the ALJ's decision, *see generally* [Doc. 9].

Plaintiff has not demonstrated that it was reversible error for the ALJ to rely on her lack of treatment in assigning weight to Dr. Martinich's opinions.

In the alternative, M.L. argues that the ALJ's "reliance on normal mental status exams as support for her conclusions betrayed a lack of recognition for the inherently subjective nature of mental impairments." [Doc. 9 at 11]. Plaintiff notes that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements," [*id.* (quotation omitted)], and reiterates that the ALJ "failed to recognize" this, [*id.* at 12], but she does not develop this argument or explain in what way the ALJ erred, *see generally* [*id.* at 11–12]. She also argues that the ALJ "cherry-picked evidence from unrelated examinations in an attempt to discount the credibility of Drs. Jeffries and Martinich," [*id.* at 12], but she again does not expound on this point, explain what evidence was cherry-picked or what evidence was ignored, identify which examinations were "unrelated," or otherwise direct the Court to a *specific* error in the ALJ's decision, *see* [*id.*]. Elsewhere in her brief, Plaintiff reiterates these same arguments, summarizes the medical opinions, and quotes portions of the ALJ's decision, but fails to tie together a clear argument identifying an error in the ALJ's decision. *See* [*id.* at 9–10]. These arguments are insufficient to raise an issue for review. *See Keyes-Zachary*, 695 F.3d at 1161 ("We will consider and discuss only those of her contentions that have been adequately briefed for our review."); *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (the reviewing court's analysis "is limited to the issues the claimant properly . . . presents on appeal" (quotation omitted)).

Absent any developed argument from Plaintiff, the Court cannot conclude that the ALJ committed reversible error. The ALJ determined that Dr. Martinich's opinions were

13

not persuasive because, in her view, the opinions were not consistent with the medical record as a whole, including M.L.'s "normal findings on mental status examinations." [Doc. 8 at 20]. The conclusion is supported by an adequate explanation and citations to the administrative record. *See* [*id.*]; *see also, e.g.*, [*id.* at 290 (noting that Plaintiff's appearance, motor movement, hygiene, speech quality, communication, affect, mood, and mood fluctuations were within normal limits, and that her thought content, thought process, and perceptual experience "appeared to be within normal limits"); *id.* at 415 (listing Plaintiff's appearance, behavior, thought process, affect, perception, insight, sleep, orientation, speech, mood, thought content, judgment, and appetite as within normal limits); *id.* at 420 (same)]. Plaintiff does not argue or direct the Court to any legal authority establishing that it was wrong for the ALJ to consider those examination results in her consideration of the record as a whole, and the Court is able to follow the ALJ's reasoning on this point. *Zambrano*, 2022 WL 1746765, at *5.

To the extent Plaintiff attempts to argue that the ALJ improperly ignored her subjective reports about her mental health in assessing Dr. Martinich's persuasiveness, the ALJ noted in her decision Plaintiff's subjective complaints of forgetfulness and difficulty understanding, remembering, completing tasks, concentrating, and following instructions. [*Id.* at 16]. The ALJ concluded, based on the record evidence, that while M.L.'s "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." [*Id.* at 17]. The ALJ then went on to explain that "evidence that [Plaintiff's] impairments preclude all employment [was] lacking," going on

14

to discuss treatment notes spanning several years, [*id.* at 17–19], and ultimately concluding that Plaintiff's "subjective complaints and alleged limitations [were] not fully persuasive," [*id.* at 21]. Although these explanations were not included in the discussion about Dr. Martinich's opinions specifically, the ALJ was not required to repeat her previous findings when weighing Dr. Martinich's opinions. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [a medical source] opinion."). Plaintiff does not explain how the ALJ "failed to recognize the inherently subjective nature of mental impairments," as she contends, [Doc. 9 at 12], and has not shown a lack of substantial evidence supporting the ALJ's decision.

In sum, Plaintiff has not shown any error in the Commissioner's decision. The Court will, therefore, affirm the decision denying benefits.

## CONCLUSION

For the reasons set forth in this order, the Commissioner's decision is respectfully **AFFIRMED**.

DATED: August 13, 2024                BY THE COURT:

_____
Nina Y. Wang
United States District Judge

15